IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

RENASANT BANK,

    Plaintiff,

    v.

BEY NATIONAL TRANSPORTATION
LOGISTICS, et al.,

    Defendants.

CIVIL ACTION FILE
NO. 1:23-CV-5136-TWT

**OPINION AND ORDER**

This is a breach of contract case. It is before the Court on the Plaintiff Renasant Bank's Motion for Partial Summary Judgment [Doc. 25]. The Defendants—Bey National Transportation Logistics, Inc.; Tucker Truck Sales & Leasing, Inc.; Napoleon Fredrick, Jr.; and Rodney Johnson—have not filed a response to the Motion. For the reasons set forth below, the Plaintiff's Motion for Partial Summary Judgment [Doc. 25] is GRANTED.

    I.    **Background**[1]

This case arises out of an alleged breach of two contracts connected to the lease and purchase of six over-the-road trucks. In February 2023, Plaintiff

---

[1] Renasant did not file a separate, numbered Statement of Undisputed Material Facts, as required under Local Rule 56.1(B). However, because Defendants did not oppose Renasant's failure to comply with Rule 56.1(B), the Court waives this rule. The operative facts are taken from the Stipulated Facts [Doc. 19] presented by Renasant, Bey National, and Fredrick on a prior motion as well as from the Statement of Undisputed Material Facts presented within Renasant's brief on the present Motion. As the Defendants have not filed a response to the Motion, the Court will deem these facts admitted.

Renasant Bank ("Renasant") and Defendant Bey National Transportation Logistics, Inc. ("Bey National") entered into an equipment finance agreement ("EFA-01 Agreement") for the purchase and lease of three over-the-road trucks. (Stipulated Facts ¶ II(a) [Doc. 19]). In April 2023, Renasant and Bey National entered into a second agreement ("EFA-02 Agreement") for an additional three over-the-road trucks. (*Id.* ¶ II(k)).

As stated in the agreements, Renasant remitted payment to the seller of the trucks, Defendant Tucker Truck Sales & Leasing, Inc. ("Tucker Truck Sales"),[2] in the amount of $500,000 for the first three trucks and $433,648.80 for the next three trucks. (*Id.* ¶¶ II(f), (n); Compl., Ex. A [3] ("EFA-01 Agreement"), at 17 [Doc. 1-1]; Compl., Ex. D ("EFA-02 Agreement"), at 4 [Doc. 1-4]). To establish Renasant's first priority security interest in the trucks, (EFA-01 Agreement, at 16; EFA-02 Agreement, at 3), Tucker Truck Sales represented it would submit title applications to the Georgia Department of Revenue for Certificates of Title naming Renasant as first lienholder, (Stipulated Facts ¶¶ II(h), (o)). Bey National also purported to present a Certificate of Liability Insurance for the EFA-01 trucks that listed Renasant as loss payee, as required by the agreements. (*Id.* ¶ II(j); EFA-01 Agreement, ¶ 8(b)).

---

[2] Renasant remitted payment via Tucker Truck Sales's designated agent, Momentum Financial Group, LLC. (Stipulated Facts ¶¶ II(f), (n)).

[3] All page numbers cited for this exhibit reflect the PDF pagination.

In addition to joining Bey National and Tucker Truck Sales as Defendants, Renasant has joined Napoleon Fredrick, Jr., and Rodney Johnson individually as Defendants. During the transaction, Fredrick acted on behalf of Bey National as its president and personally guaranteed any existing and future debt Bey National owed to Renasant. (Stipulated Facts ¶¶ II(b), (d), (i)–(j), (l), (p); *see also* Compl., Ex. B ("Continuing Guaranty Agreement") [Doc. 1-2]). Johnson acted on behalf of Tucker Truck Sales. (Stipulated Facts ¶¶ II(g), (o)).

Regarding the incident in question, Renasant argues that, although it fully performed, Bey National defaulted on its payment obligation after having "made sporadic payments." (Br. in Supp. of Pl.'s Mot. for Partial Summ. J., at 12, 15 [Doc. 25-1]). Renasant also "never received the original Certificates of Title with the appropriate lien notations" and found that the Georgia Department of Revenue had not even received the title applications. (Stipulated Facts ¶¶ III(c)–(d)). Renasant then sent a letter to Bey National and Fredrick declaring a default, to which it received no response. (*Id.* ¶¶ III(g)–(i)). Renasant additionally states that the Certificate of Insurance that Bey National provided was false and fake, having found that the company listed as the first coverage did not insure Bey National and that the policy number for the second coverage was fake. (Decl. of Glynis Tilley in Supp. of Mot. for Prelim. Inj. ("Tilley Decl.") ¶ 19 [Doc. 12-2]).

In April 2024, the Court ordered Bey National and Fredrick to ground and confine the trucks, disclose their location to Renasant, make them available for Renasant's inspection, and provide their original Certificates of Title, among other things. (*See* Apr. 9, 2024 Order, at 4–5 (setting a deadline of seven days)). Renasant states that it still has not been able to locate or inspect the trucks and that it still has not received the original titles. (Br. in Supp. of Pl.'s Mot. for Partial Summ. J., at 8, 13, 16).

Renasant now seeks partial summary judgment on Counts I, II, IV, and V of its Complaint: breach of contract against Bey National for the EFA-01 Agreement (Count I), breach of contract against Bey National for the EFA-02 Agreement (Count II), deprivation of property against Bey National and Fredrick (Count IV), and money had and received against Tucker Truck Sales (Count V). Renasant also requests final judgment as to each of those counts under Rule 54(b).[4]

## II. Legal Standard

Summary judgment is appropriate only when the pleadings, depositions, and affidavits submitted by the parties show that no genuine issue of material fact exists, and that the movant is entitled to judgment as a matter

---

[4] While Renasant requests final judgment as to all four counts in its brief, (*see* Br. in Supp. of Pl.'s Mot. for Partial Summ. J., at 20), it has requested final judgment only as to Counts I and II in the Motion itself, (*see* Pl.'s Mot. for Partial Summ. J., at 2). The Court will construe Renasant's position as requesting final judgment on all four counts.

of law. Fed. R. Civ. P. 56(a), (c). The court should view the evidence and draw any inferences in the light most favorable to the nonmovant. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158–59 (1970). The party seeking summary judgment must first identify grounds that show the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986). The burden then shifts to the nonmovant, who must go beyond the pleadings and present affirmative evidence to show that a genuine issue of material fact exists. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 257 (1986).

Despite the Defendant's lack of opposition, the Court "cannot base the entry of summary judgment on the mere fact that the motion [i]s unopposed, but, rather, must consider the merits of the motion." *United States v. 5800 74th Ave.*, 363 F.3d 1099, 1101 (11th Cir. 2004). In considering the merits, the Court "need not sua sponte review all of the evidentiary materials on file at the time the motion is granted, but must ensure that the motion itself is supported by evidentiary materials." *Id.*

### III. Discussion

#### A. Breach of Contract (Counts I and II)

A federal court sitting in diversity applies the forum state's choice-of-law rules. *Am. Fam. Life Assurance Co. of Columbus v. U.S. Fire Co.*, 885 F.2d 826, 830 (11th Cir. 1989) (citing *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487 (1941)). In Georgia, the choice-of-law rules require courts to apply the state law chosen by the contracting parties unless doing so would contravene Georgia

5

public policy.[5] *Neibert v. Comput. Scis. Corp.*, 621 F. App'x 585, 589 (11th Cir. 2015) (quoting *Carr v. Kupfer*, 250 Ga. 106, 107 (1982)). Here, the agreements require that Alabama law governs the contract dispute.[6] (*See* EFA-01 Agreement ¶ 17(i)). Under Alabama law, a claimant in a breach of contract action "must prove: (1) the existence of a valid contract binding the parties in the action, (2) his own performance under the contract, (3) the defendant's nonperformance, and (4) damages." *S. Med. Health Sys., Inc. v. Vaughn*, 669 So. 2d 98, 99 (Ala. 1995). Because all elements of a breach have been met for the EFA-01 and EFA-02 Agreements and no material facts are in genuine dispute, the Court finds summary judgment proper as to Counts I and II.

First, Renasant and Bey National stipulated that they entered into the two agreements, which appear on their face to be valid and binding. (*See* Stipulated Facts ¶ II(a), (k)). Bey National has not presented evidence showing the agreements were invalid or nonbinding. (*See* Br. in Supp. of Pl.'s Mot. for Partial Summ. J., at 11–12, 14–15).

---

[5] The Court notes that nothing about applying Alabama law here appears contrary to Georgia public policy.

[6] The choice-of-law provision states that the Master Agreement and its schedules "shall be governed in all respects by, and construed and enforced in accordance with, the laws of the State of Alabama . . . ." (EFA-01 Agreement ¶ 17(i)). The Court construes this language as requiring the application of Alabama law to the breach of contract claim but not the related tort and equitable relief claims also at issue here. *See Green Leaf Nursery v. E.I. DuPont De Nemours & Co.*, 341 F.3d 1292, 1300–01 (11th Cir. 2003) (finding that substantially the same language did not apply to related tort claims); *Don't Look Media LLC v. Fly Victor Ltd.*, 999 F.3d 1284, 1298–99 (11th Cir. 2021).

Second, Renasant has proved that it performed its obligations fully under the contracts—by providing an affidavit stating that Renasant wired funds to Tucker Truck Sale's designated agent for the purchase price of the six trucks. (Tilley Decl. ¶¶ 9, 13). Again, Bey National has not disputed this fact. (*See* Br. in Supp. of Pl.'s Mot. for Partial Summ. J., at 12, 15).

Third, Renasant has successfully proved material breach due to Bey National's failure to pay.[7] Renasant's affidavit asserts Bey National made "sporadic and untimely payments" in violation of the payment terms of each agreement. (Tilley Decl. ¶ 16). Bey National denied this allegation in its Answer and noted it had "made certain payments to Renasant." (*See* Ans. ¶ 18). However, Bey National has not provided any evidence regarding timely payment to Renasant and, thus, this Court cannot conclude that a genuine issue of material fact exists as to payment. *See* Fed. R. Civ. P. 56(e) ("If a party . . . fails to properly address another party's assertion of fact as required by Rule 56(c), the court may . . . consider the fact undisputed for purposes of the motion [or] grant summary judgment if the motion and supporting materials

---

[7] In its Complaint, Renasant alleges that Bey National defaulted on both agreements for "non-payment, failure to complete the pledge and perfection of the security interests granted by Bey National . . . , failure to provide proof of insurance, the making of material misrepresentations to Renasant and other conduct through which Plaintiff deems itself insecure." (Compl. ¶¶ 29, 33). Because Renasant's brief in support of its Motion appears to assert breach with respect to only payment, (*see* Br. in Supp. of Pl.'s Mot. for Partial Summ. J., at 12–13, 15–16), this Court focuses on only payment as well.

. . . show that the movant is entitled to it . . . ."). Thus, this Court finds that Bey National breached both agreements.

Fourth, it is clear that Renasant was damaged by Bey National's failure to perform. Bey National has not repaid Renasant the amount owed (totaling at least $887,678.98), and Renasant does not currently possess its security interest—the trucks—as a result of the default. (*See* Tilley Decl. ¶¶ 24–25; Br. in Supp. of Pl.'s Mot. for Partial Summ. J., at 13, 16). Bey National has not submitted evidence pointing to a genuine issue of material fact with respect to damages. Therefore, given all the above, the Court grants summary judgment in Renasant's favor as to Counts I and II.

### B. Deprivation of Property (Count IV)

Under Georgia's choice-of-law rules, "tort cases are governed by the substantive law of the state where the tort was committed." *Federated Rural Elec. Ins. Exch. v. R.D. Moody & Assocs.*, Inc., 468 F.3d 1322, 1325 (11th Cir. 2006) (citing *Ohio S. Express Co. v. Beeler*, 110 Ga. App. 867, 868 (1965)). Based on the evidence available, it appears that the tort occurred in Georgia, where the Defendants are located. The Georgia Code states: "The owner of personalty is entitled to its possession. Any deprivation of such possession is a tort for which an action lies." O.C.G.A. § 51-10-1. The statute codifies the common law action of trover and conversion. *Levenson v. Word*, 294 Ga. App. 104, 106 (2008) (quoting *Grant v. Newsome*, 201 Ga. App. 710, 710 (1991)). To establish a claim, the Plaintiff must typically prove four elements: "(1) title to

the property or the right of possession, (2) actual possession in the other party, (3) demand for return of the property, and (4) refusal by the other party to return the property." *Washington v. Harrison*, 299 Ga. App. 335, 338 (2009) (quoting *Metzger v. Americredit Fin. Servs., Inc.*, 273 Ga. App. 453, 454 (2005)).

The Court finds that Renasant has established all four elements. First, Renasant has showed it is entitled to possession of the trucks. According to the "master agreement" for the EFA-01 and EFA-02 schedules, Renasant was entitled, upon the Defendants' default, to "take immediate possession of . . . the Equipment." (*See* EFA-01 Agreement ¶ 12(a)). Second, it appears that Bey National retains actual possession of the trucks—or at least had retained possession at some point, which is all that is required. *See Trey Inman & Assocs., P.C. v. Bank of Am., N.A.*, 306 Ga. App. 451, 457–58 (2010) (citing *William Goldberg & Co. v. Cohen*, 219 Ga. App. 628, 640 (1995) (finding a conversion action still proper where the "security interest is disposed of without the creditor's authorization" (emphasis omitted) (citation omitted)). Bey National and Fredrick have previously argued they "should be allowed to continue operating their business" with "their trucks," (Def.'s Resp. in Opp'n to Pl.'s Mot. for Prelim. Inj., at 3), and Renasant states that Bey National and Fredrick have not made the trucks available or their location known, as this Court required them to do, (*see* Br. in Supp. of Pl.'s Mot. for Partial Summ. J., at 8). Third, Renasant has provided an August 2023 letter showing it

demanded the trucks be made available and otherwise confined to a declared location. (*See* Compl., Ex. F, at 2 [Doc. 1-6]; Tilley Decl. ¶ 20). Lastly, Renasant's affidavit states that neither Bey National nor Fredrick responded to the demand, leading this Court to conclude that the Defendants "refused" the demand. (Tilley Decl. ¶ 21; *see also* Stipulated Facts ¶ III(i)). Therefore, the Court grants summary judgment to Renasant as to Count IV.

### C. Money Had and Received (Count V)

As to Count V, Renasant requests "in equity and good conscious" that Defendant Tucker Truck Sales be ordered to return the funds received from Renasant that have yet to be repaid by Bey National and Fredrick ($887,678.98). (Br. in Supp. of Pl.'s Mot. for Partial Summ. J., at 18–19). Under Georgia law, a claim for "money had and received" has three elements: "a person has received money of the other that in equity and good conscience he should not be permitted to keep; demand for repayment has been made; and the demand was refused." *Cadle Co. II v. Menchion*, 808 F. App'x 988, 994 (11th Cir. 2020) (quotation marks and citation omitted). A plaintiff cannot recover for both breach of contract and money had and received from the same defendant. *See id.* at 994–95; *Pickelsimer v. Traditional Builders*, 183 Ga. App. 709, 710 (1987). However, Renasant does not assert a breach of contract claim against Defendant Tucker Truck Sales, and Tucker Truck Sales is in default. Therefore, Renasant is entitled to judgment on its money had and received claim as to this Defendant. *See Cadle Co. II*, 808 F. App'x at 994.

10

### D. Damages

Although the Court grants Renasant's Motion with respect to the breach of contract and deprivation of property claims as to the Defendant Bey National, Renasant may not recover under both theories because doing so would result in a double recovery. Renasant currently seeks (1) damages for breach of contract for failure to repay the loan on the trucks and (2) damages for the conversion of those same trucks. For the breach of contract claims, Renasant requests $469,361.05 under Count I and $418,317.93 under Count II ($887,678.98 total). (Br. in Supp. of Pl.'s Mot. for Partial Summ. J., at 14, 17). These amounts represent the debt remaining on the loans, plus penalties and late fees. (*Id.* at 7). For the deprivation of property claim under Count IV, Renasant requests judgment for the possession of the trucks, if currently possessed by Bey National or Fredrick, or a money judgment for the $887,678.98 owed on the trucks in the alternative. (*Id.* at 18).

Renasant is, however, "entitled to only one satisfaction of the same damages, in either contract or tort." *Marvin Nix Dev. Co. v. United Cmty. Bank*, 302 Ga. App. 566, 568 (2010) (quoting *Flanigan v. Exec. Off. Ctrs., Inc.*, 249 Ga. App. 14, 16 (2001)). A plaintiff may pursue inconsistent remedies prior to the judgment, as Renasant has done in this case, but it ultimately must "make, and be given the opportunity to make, an election prior to the formulation and entry of judgment." *UIV Corp. v. Oswald*, 139 Ga. App. 697, 699 (1976). Thus, Renasant has the right to elect its remedy under either the

contract or tort theory. *Marvin*, 302 Ga. App. at 568 (citing *Pope v. Pro. Funding Corp.*, 221 Ga. App. 552, 555 (1996)); *see also, e.g.*, *Trost v. Trost*, 525 F. App'x 335, 346 (6th Cir. 2013) ("The election-of-remedies doctrine—'the legal version of the idea that a plaintiff may not have his cake and eat it too'—works to prevent double recovery." (citation omitted)); *Sorayama v. Robert Bane Ltd.*, 380 F. App'x 707, 709 (9th Cir. 2010). The Court therefore grants Renasant fourteen days from the date of this Order to elect its remedy with respect to the Defendant Bey National.

### E. Rule 54(b) Certification

Where a party requests Rule 54(b) certification, the Court conducts a two-step analysis. First, the Court must determine whether the decision is both a "judgment" and "final." *Peden v. Stephens*, 50 F.4th 972, 977 (11th Cir. 2022) (quoting *Lloyd Noland Found., Inc. v. Tenet Health Care Corp.*, 483 F.3d 773, 777 (11th Cir. 2007)). The decision must be a "judgment" in that "it is a decision upon a cognizable claim for relief." *Id.* at 977 (quoting *Lloyd*, 483 F.3d at 777). And the decision must be "final" in that it is the "ultimate disposition" of an "individual" and "separable" claim among multiple claims in a suit. *Lloyd*, 483 F.3d at 777, 779. Second, the Court must determine whether there is "no just reason for delay." *Peden*, 50 F.4th at 977 (quoting *Lloyd*, 483 F.3d at 777). This second inquiry requires balancing efficient judicial administration against the equities. *Curtiss-Wright Corp. v. Gen. Elec. Co.*, 446 U.S. 1, 8 (1980).

Against the backdrop of these two steps, the Eleventh Circuit has instructed courts to exercise their discretion "conservatively" against Rule 54(b) certification. *Ebrahimi v. City of Huntsville Bd. of Educ.*, 114 F.3d 162, 166 (11th Cir. 1997) (citing *In re Se. Banking Corp.*, 69 F.3d 1539, 1550 (11th Cir. 1995)). Certification must be reserved for the "infrequent harsh case" given the potential "overload in appellate courts which would otherwise result." *Curtiss-Wright*, 446 U.S. at 5.

Here, the Court is not persuaded that Rule 54(b) certification is appropriate. The three unadjudicated claims—breach of guaranty, fraud, and conspiracy—do not appear to be entirely "separable" from the adjudicated claims under the first step of the analysis. In addition, punitive damages are sought against the Defendants Bey National and Frederick in Count IV. Chiefly, the remedies sought for the adjudicated and unadjudicated claims appear to overlap to varying degrees, and the "touchstone for determining whether an entire 'claim' has been adjudicated for the purposes of Rule 54(b) is whether that claim is 'separately enforceable' without 'mutually exclu[ding]' or 'substantially overlap[ping]' with remedies being sought by the remaining claims pending . . . " *Scott v. Advanced Pharm. Consultants, Inc.*, 84 F.4th 952, 960 (11th Cir. 2023) (alteration in original) (quoting *Lloyd*, 483 F.3d at 780); *see also, e.g.*, *GE Cap. Mortg. Servs., Inc. v. Pinnacle Mortg. Inv. Corp.*, 897 F. Supp. 854, 875–76 (E.D. Pa. 1995) (denying Rule 54(b) certification for breach of guaranty because it was not a separable claim from the unadjudicated

13

claims for breach of contract, conversion, fraud, and equitable relief).

Even if the claims were separable, the second step weighs against Rule 54(b) certification. The same core set of facts underlie Renasant's adjudicated claims and unadjudicated claims. Like the adjudicated claims, the unadjudicated claims are intertwined with the EFA-01 and EFA-02 Agreements and the commitments Defendants made or purported to make as a result. A piecemeal appeals process is therefore unlikely to result in efficient judicial administration since the appellate court would need to relearn the same set of facts. *See Ebrahimi*, 114 F.3d at 167 ("[W]hen the factual underpinnings of the adjudicated and unadjudicated claims are intertwined, courts should be hesitant to employ Rule 54(b)." (citation omitted)). Furthermore, the Court does not find certification justified merely by Renasant's argument that "Defendants no longer wish to participate in this proceeding." (*See* Br. in Supp. of Pl.'s Mot. for Partial Summ. J., at 20).

## IV.  Conclusion

For the foregoing reasons, the Plaintiff Renasant Bank's Motion for Partial Summary Judgment [Doc. 25] is GRANTED as to Counts I, II, IV (except as to punitive damages), and V. The Plaintiff is DIRECTED to elect its remedy as to Counts I, II and IV with respect to the Defendant Bey National by filing a notice with the Court within fourteen days from the date of this Order.

SO ORDERED, this   9th   day of October, 2024.

/s/ Thomas W. Thrash
THOMAS W. THRASH, JR.
United States District Judge